Catherine MERCADO and Michael B. Kuknyo, Plaintiffs-Appellants,

v.

CALUMET FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant-Appellee.

No. 84–1875.

United States Court of Appeals, Seventh Circuit.

Submitted April 30, 1985 *.

Decided May 20, 1985.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Jeffrey Burge, Hammond, Ind., for plaintiffs-appellants.

J. Stirling Mortimer, Chicago, Ill., for defendant-appellee.

Before WOOD, COFFEY and EASTER-BROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Catherine Mercado bought a house with funds lent by the Calumet Federal Savings & Loan Association. According to the complaint, from which we take all the facts, she told Calumet that Michael B. Kuknyo, her son, would live in the house and make payments on the mortgage. For several years Calumet accepted Kuknyo's payments and all went well.

Then Calumet noticed that the house was insured in Kuknyo's name, and it asked Mercado to transfer formal ownership of the property to him. When Mercado gave Calumet the documents of sale, Calumet declared the loan in default because she had not obtained its approval to sell (for which, we suppose, it could have extracted compensation). It accelerated the loan and demanded immediate payment on pain of foreclosure. Calumet also offered Mercado the option of refinancing the loan at a higher rate of interest. The refinancing would have entailed new application fees and closing charges. Calumet says that the higher charge was the appropriate one for a borrower not living in the premises. On a view more favorable to Mercado, Calumet simply sought to take advantage of an increase in the market rate of interest between the time of the loan and the time of the transfer to Kuknyo.

Mercado preferred the original loan to the proposed refinancing and brought this suit. She and Kuknyo maintain that the acceleration and refinancing would violate § 7(b) of the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2607(b), which provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." (Section 7 was later redesignated section 8, but we use the original numbering.) Mercado and Kuknyo contend that the refinancing, new charges and closing costs are a "real estate settlement service," see *United States v. Graham Mortgage Corp.*, 564 F.Supp. 1239 (E.D.Mich.1983), and that Calumet seeks new compensation without new "services actually performed."

The district court dismissed the suit for failure to state a claim on which relief may be granted. The court thought it "apparent from the face of plaintiffs' amended complaint that any fees received by this defendant in connection with the subject mortgage were for 'services actually performed.' This action is a transparent attempt to transform section 2607(b) into a general mortgage loan antifraud provision in circumvention of the statute's plain language and purpose."

■ We affirm because the complaint does not allege that Calumet gave or received "any portion, split, or percentage of any charge" to a third party. Section 8 of RESPA is an anti-kickback statute. The statute requires at least two parties to share fees. As the Senate Report explained, § 8 "is intended to prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished for the referral of real

estate settlement business. The section also prohibits a person that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." S.Rep. 93–866, 93d Cong., 2d. Sess. (1974), reprinted at 1974 U.S.Code Cong. & Admin.News 6551. The complaint does not allege the presence of any "other person." Calumet simply seeks additional fees on the refinancing of the mortgage. Calumet may be right or it may be wrong in believing that Mercado and Kuknyo committed a default permitting the acceleration of the loan, but the bank's error, if any, does not create the "other person" and the "portion, split, or percentage" of which the statute speaks.

We emphasized in *United States v. Gannon*, 684 F.2d 433 (7th Cir.1981) (en banc), that RESPA was designed to address a variety of practices that raised the cost of real estate settlement services. We held that a counter attendant at Cook County's title registration office violated RESPA by accepting "gratuities" of two or three dollars for recording changes of title. The attendant's acts met the common definition of a split; he took part of a payment for himself and passed on the rest. He had no right to make his services contingent on this payment, yet he did. The "gratuities" also involved multiple parties. Cook County imposed a statutory fee, which was supposed to cover all of the attendant's services, yet the attendant collected a larger fee and kept part for himself.

Some language in *Gannon*, taken out of context, might support Mercado and Kuknyo. We said in *Gannon* that "Congress' aim was to stop *all* abusive practices that unreasonably inflate federally related settlement costs to the public." *Id.* at 438 (emphasis in original). Parts of the opinion in *Gannon* may be read to state that any payment in excess of the value of the services rendered is an abusive practice, the equivalent of splitting fees and equally to be condemned. The court had no occasion to consider unduly high fees in *Gannon*, however, for the case focused squarely on an arrangement under which a participant in the settlement process extracted more than a statutorily-prescribed fee, remitted the appropriate fee to the County, and kept the rest for himself.

If Cook County imposed a single fee of $100 per transfer of title, it would not be possible to attack that fee under RESPA by saying that everything over $25 is "too high" and "abusive" because the cost of service is only $25. Congress considered and explicitly rejected a system of price control for fees; it concluded that the price of real estate services should be set in the market. See 1974 U.S.Code Cong. & Admin.News 6549–50. It directed § 8 against a particular kind of abuse that it believed interfered with the operation of free markets—the splitting and kicking back of fees to parties who did nothing in return for the portions they received. Gannon received a portion of a fee without delivering any service other than the one he was legally obliged to perform in exchange for the statutory fee payable to the County. We held in *Gannon* that "a single individual *can* violate § 2607(b) by receiving in his official capacity a 'charge' for the rendering of settlement services, but personally keeping a portion of the charge in fact for something other than the performance of those services." 684 F.2d at 438 (emphasis in original). Nothing of the sort occurred here.

Doubtless RESPA is a broad statute, directed against many things that increase the cost of real estate transactions. Full enforcement of its provisions will assist the buyers of houses. But the objective of a statute is not a warrant to disregard the terms of the statute. Congress always has some objective in view when it legislates, and it is always possible to move a little farther in the direction of that objective. The fact that Congress has pointed in a particular direction does not authorize a court to march in that direction without limit. The language and structure of the statute establish how far to go. We honor the decision of Congress by choosing stopping points no less than by achieving more of the ultimate end in view. Section

8(b) contains an intelligible stopping point, to which we adhere.

Our construction of the statute does not open the field to the sort of practices Congress meant to proscribe. It does no more than ensure that questions of the interpretation and enforcement of contracts are committed to state law and state courts. Mercado and Kuknyo say that Calumet is seeking unearned payment for services it did not render. Calumet is entitled to respond that it seeks only to enforce the conditions in the note and mortgage. If the borrower commits an act of default, then the contract entitles the lender to accelerate; a lender with a right to accelerate has a right to collect a fee for forbearing.

The ability to collect such fees tends to produce lower fees and rates of interest in the first place. If the contract said: "On closing the borrower will pay $50, and on an event of default the borrower must pay another $50," it would be hard to characterize the second $50 as an unearned fee. An effort to ban the second fee would only lead the bank to increase the first one. It would not make any difference if the contract said: "On closing the borrower will pay $50, and on an event of default the borrower must pay a second, unearned fee of $50." Cf. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (whether a statute imposes "multiple" punishments depends on the intent of the drafters, not on linguistic creation of separate penalties).

If the lender tried to collect $100 when the contract allowed only $50, the extra $50 would be "unearned", and perhaps a court could characterize the threat to extract the extra $50 as "abusive" just as if an employee of the lender demanded $50 for himself. But all of this simply points up the problem at the core of the plaintiffs' case: they seek to convert every violation of a loan agreement into a violation of RESPA. If Calumet's demand for refinancing is authorized by the note and mortgage, then there is no demand for payment for services not rendered, no abuse. If Calumet's demand is not autho-

rized by the agreement with Mercado, then a state court will not enforce the acceleration or foreclose on the mortgage. Whatever Congress may have meant by § 8, it did not mean to make every violation of a contract a violation of federal law too.

AFFIRMED.