James R. WILLIS and Alice G. Willis, etc., Plaintiffs,

v.

QUALITY MORTGAGE USA, INC., Defendant.

Civil Action No. 94–T–1370–N.

United States District Court, M.D. Alabama, Northern Division.

May 12, 1998.

C. Knox McLaney, III, Angela L. Kimbrough, McLaney & Associates, Montgomery, AL, Cathleen Combs Cohen, Daniel A. Edelman, James O. Latturner, Edelman & Combs, Chicago, IL, for Plaintiffs.

James A. Byram, Jr., Balch & Bingham, Montgomery, AL, James F. McCabe, Michael J. Agoglia, Morrison & Forester, San Francisco, CA, for Defendant.

## *ORDER*

MYRON H. THOMPSON, District Judge.

Plaintiffs James R. and Alice G. Willis brought this lawsuit alleging that defendant Quality Mortgage USA, Inc. charged them fees for services which were not performed or were not necessary, in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.A. § 2607, and imposed an illegal penalty for prepayment, in violation of § 5–19–4 of the 1975 Code of Alabama. The court has jurisdiction pursuant to 12 U.S.C.A. § 2614 and 28 U.S.C.A. § 1367. This cause is now before the court on Quality Mortgage's motion to dismiss the complaint.[1] For the reasons that follow, the motion will be granted.

## I. BACKGROUND

Considered in the light most favorable to the plaintiffs, the relevant facts are as follows. On March 4, 1994, the Willises applied for a home equity loan with a mortgage broker. (The mortgage broker is not a party to this lawsuit.) The mortgage broker processed the Willises' application, and eventually, on March 19, 1994, the Willises entered into a mortgage agreement with Quality Mortgage as the lender. Pursuant to that agreement, the Willises paid Quality Mortgage a variety of fees, including a "review appraisal" fee of $250, a "document preparation" fee of $200, and a "tax service contract" fee of $87. They also paid a fee to the mortgage broker. In addition, the mortgage agreement compelled the Willises to pay a penalty if they prepaid their loan.

## II. DISCUSSION

In considering a defendant's motion to dismiss, the court must accept the plaintiff's allegations as true, Fed.R.Civ.P. 12(b); *Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir. 1990), and must construe the complaint liberally in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The lawsuit may not be dismissed unless the plaintiff can prove no set of facts supporting the relief requested. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993). Thus, if the plaintiff's legal theory of liability is sound, the claim may not be dismissed.

In their two federal claims, the Willises allege that two of Quality Mortgage's practices violate RESPA, and they rely on the rules interpreting RESPA promulgated by the Department of Housing and Urban Development (HUD) to establish their claims. Regulation 3500.14 (Part 3500, § 14) of Title 24 of the Code of Federal Regulations (C.F.R.) contains HUD's official interpretation of § 2607. Pursuant to 12 U.S.C.A. § 2617(a), the Secretary of Housing and Urban Development is empowered to make such interpretations. HUD has recently changed the regulation at issue, and the Willises urge upon the court an interpretation of the rule that, as far as the court can discern, has not yet been accepted by any court.

When faced with an agency's interpretation of a statute, the court must first determine "whether Congress has directly spoken to the precise question at hand." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress has addressed the issue, "that is the end of the matter; . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–843, 104 S.Ct. at 2781. However, if the court concludes that Congress has not directly addressed the issue, or if "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782; *see also Dawson v. Scott*, 50 F.3d 884, 886–87 (11th Cir.1995). "If the administrator's reading fills a gap or defines a term in a way that is reasonable in

---

1. Complaint filed on December 12, 1994. The Willises filed an amended complaint on April 17, 1995, which added several more claims. The additional claims are not addressed in this order.

light of the legislature's revealed design, [the court must] give the administrator's judgment 'controlling weight' " *NationsBank of N.C. v. Variable Annuity Life Ins.,* 513 U.S. 251, 257, 115 S.Ct. 810, 813–814, 130 L.Ed.2d 740 (1995) (quoting *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.) Thus, to determine whether it must follow HUD's interpretation of RESPA, the court must consider whether Congress has addressed the issue; if so, it must give effect to Congress's intent. If not, the court must follow HUD's interpretation unless it is unreasonable.

### A. Whether payment of unearned fees which are not split violates RESPA

The Willises allege that Quality Mortgage violated RESPA by charging them for services which were not actually performed or were not necessary. They contend that, under subpart (c) of 24 C.F.R. § 3500.14, which interprets § 2607(b), it is not necessary to prove that the allegedly improper fee was *split* with anyone to recover under § 2607. Quality Mortgage contends that the Willises have misread subpart (c) of Regulation 3500.14, and that charging for such services is simply not prohibited by RESPA as long as the fees in question were not split with anyone. The lender contends that, because the Willises' complaint did not allege that the fees they paid in connection with their mortgage transaction were split with any third party, they may not recover under 12 U.S.C.A. § 2607. To address this claim, the court must engage in a three-step process. First, it must determine whether the Willises' proposed interpretation of subpart (c) of Regulation 3500.14 is the correct reading of the regulation. If not, their claim must fail. However, if the Willises' reading is correct, the court must proceed to step two: deter-

mining whether Congress has addressed the issue. If so, as stated earlier, it must give effect to Congress's intent. However, if Congress has not addressed the issue and the Willises' interpretation is the correct reading of the regulation, the court must follow it unless it is unreasonable.

The Willises contend that a charge for unearned fees that are not split with anyone violates RESPA. "At its core, 'RESPA is an anti-kickback statute.' " *Durr v. Intercounty Title Co. of Illinois,* 14 F.3d 1183, 1186 (7th Cir.1994), quoting *Mercado v. Calumet Fed. Sav. & Loan Ass'n,* 763 F.2d 269, 270 (7th Cir.1985). Section 2607 attempts to prevent kickbacks by prohibiting two types of payments in mortgage settlements: (1) payment of fees or kickbacks for the referral of business, and (2) splitting fees with anyone for anything other than services actually performed.[2] If the complaint does not "allege any such kickback to a third person, the plaintiff [has] failed to state a claim under RESPA." *Durr,* 14 F.3d at 1187. *See also Mercado,* 763 F.2d at 270 ("The statute requires at least two parties to share fees").

The Willises acknowledge, as they must, that on its face § 2607 prohibits unearned fees only if they are split with a third party. However, they contend that Regulation 3500.14 of 24 C.F.R. expands this prohibition to encompass unearned fees which are not split with anyone. Subpart (c) of Regulation 3500.14 provides as follows:

> *"No split of charges except for actual services performed.* No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a settlement service in connection with a transaction involving a federally-related mortgage loan other than

---

**2.** Section 2607(a) provides as follows: "Business referrals. No person shall give and no person shall receive any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." Although § 2607(a) prohibits referral fees, § 2607(c) exempts payments for goods or services from that prohibition, as follows: "Nothing in this section shall be construed as prohibiting . . . the payment to any person of a

bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed."

Section 2607(b) provides as follows: "Splitting charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

for services actually performed. A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section. The source of the payment does not determine whether or not a service is compensable. Nor may the prohibitions of this Part be avoided by creating an arrangement wherein the purchaser of services splits the fee."

The Willises contend that the second sentence of this section—which was added to the 1993 edition of the C.F.R.—prohibits the payment of fees for which no services are performed even if the fee is not split with anyone.[3] They contend that HUD added this sentence to expand the scope of RESPA in order to regulate so-called junk fees associated with mortgage agreements. Quality Mortgage contends that the addition of this sentence does not change the focus of the section, which, it contends, remains the prohibition of the splitting of fees except for services actually performed.

■ The plain language of the statute and the regulation and the history of the change to the regulation demonstrate that the Willises' interpretation of the regulation is without merit. The statute prohibits the splitting of fees unless a service is actually performed. The prohibition of splitting fees is consistent with the goal of prohibiting payments from a mortgage lender to a mortgage broker so that the broker will refer business to the lender. Second, subpart (c) of Regulation 3500.14 must be read in its entirety. The court may not, by concentrating on one sentence and ignoring its context, create an entirely new zone of proscribed conduct.

When read as a whole, it is clear that subpart (c) of Regulation 3500.14 prohibits the payments for which no services are performed only if those payments are split with another party. Third, in its explanation for the changes in the regulation, HUD explained that it had made the changes in order "to clarify what constitutes payments and services" for the purposes of the statute and the regulations regarding illegal split payments. 57 Fed.Reg. 49,605. Thus, from this history, it appears that HUD was attempting to clarify the kinds of fees that were included in the prohibition against split fees and referral, not to expand the prohibition to include fees which were not split. Accordingly, payments which are not split and which are not in exchange for business referrals do not violate § 2607.[4] Having determined that the Willises' proposed interpretation of subpart (c) of Regulation 3500.14 is incorrect, the court does not reach the issues of whether Congress has addressed the issue and whether HUD's regulations are reasonable.[5]

**B.  Whether payment for services which are not distinct from the primary services rendered violates RESPA**

The Willises contend that Quality Mortgage violated RESPA by charging them for services which were not 'actual, necessary and distinct' from the primary services provided by Quality Mortgage. They contend that even absent a referral, all fees must be for distinct and necessary services. Quality Mortgage contends that, unless there is a referral, there can be no violation of RESPA, and that all of the fees paid by the Willises were for distinct and necessary services. Although the Willises do not specify the section

3.  Before the change, Regulation 3500.14(c) read as follows:

"No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage other than for services actually performed."

4.  In count I of both their complaint and their amended complaint, the Willises argue that RESPA prohibits fees for which no services are performed, and which are not split. By concluding that RESPA prohibits payment or receipt un-

earned fees only if they are split, the court is dismissing count I of both the complaint and the amended complaint.

5.  The recent decision in *Culpepper v. Inland Mortg. Corp.*, 132 F.3d 692 (11th Cir.1998), does not warrant a different conclusion. There, the Eleventh Circuit Court of Appeals held that a lender's yield spread premium payment to broker was a referral fee prohibited by RESPA. *Culpepper* does not support the general proposition advanced by the Willises, that, under subpart (c) of Regulation 3500.14, it is not necessary to prove that the allegedly improper fee was *split* with anyone to recover under § 2607.

of RESPA or C.F.R. they rely upon, it appears that they rely on the recent changes to subpart (g)(3) of Regulation 3500.14. As stated above, when faced with an agency's interpretation of a statute, the court must engage in a three-step process. First, it must determine whether the Willises' proposed interpretation of subpart (g)(3) of Regulation 3500.14 is the correct reading of the regulation. If not, their claim must fail. If so, the court must proceed to step two: determining whether Congress has addressed the issue. If so, it must give effect to Congress's intent. However, if Congress has not addressed the issue and the Willises' interpretation is the correct reading of the regulation, the court must follow it unless it is unreasonable.

■■ Subpart (g)(3) of Regulation 3500.14, provides in part as follows:

> "Multiple services. When a person in a position to refer settlement service business, such as [a] mortgage lender, ... receives a payment for providing additional settlement services as part of a real estate transaction, such payment must be for services that are actual, necessary and distinct from the primary services provided by such person."

The Willises contend that, even absent a referral, all fees must be for distinct and necessary services. As discussed above, because RESPA is an anti-kickback statute, for the Willises' interpretation to be reasonable, it must be consistent with the goal of preventing kickbacks. When subpart (g)(3) of Regulation 3500.14 was added, HUD explained that it had "added some language to clarify what constitutes ... services for purposes of Section 8." 57 Fed.Reg. 49,605. Thus, it appears that HUD intended for its changes to more fully explain what was meant by "service", as that term is used in § 2607(a) and (b), not that HUD intended to expand the scope of RESPA's coverage. As discussed above, HUD is empowered to interpret the statute, not to create new laws. It appears that the payment to which the regulation refers is a payment from a mort-

gage lender to a mortgage broker, or vice versa. It does not refer to a payment from the borrower to the broker or lender. Thus, in light of the overall purpose of RESPA, the Willises' interpretation of subpart (g)(3) of Regulation 3500.14 is incorrect. Having determined that the Willises' proposed interpretation of subpart (g)(3) of Regulation 3500.14 is incorrect, the court does not reach the issues of whether Congress has addressed the issue and whether HUD's regulations are reasonable.

### C. Whether imposing a prepayment penalty violates Alabama state law

The Willises allege that their mortgage agreement with Quality Mortgage imposed a prepayment penalty in violation of § 5–19–4(c) of Chapter 19 of Title 5 of the 1975 Alabama Code. Quality Mortgage contends that because it is an approved mortgagee under the National Housing Act, § 5–19–31(a) of Chapter 19 expressly exempts it from the provisions of § 5–19–4(c). Section 5–19–31(a) provides in part as follows: "The provisions of this chapter, except the provisions of subdivision (1) of Section 5–19–1 and Section 5–19–3, shall not apply to any loan, forbearance, credit sale, lease, or other transaction involving an interest in real property or the sale, lease, or mortgage of an interest in real property, where the creditor is a lending institution which is an approved mortgagee under the provisions of the National Housing Act." Thus, by the terms of the statute, real estate transactions involving an approved mortgagee are exempt from the restrictions imposed by Chapter 19. Quality Mortgage is an approved mortgagee under the National Housing Act.[6]

■■] To support their contention that § 5–19–4(c) applies to this transaction, the Willises rely on *Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n*, 294 Ala. 173, 314 So.2d 51 (1975). In *Fletcher*, the Alabama Supreme Court, interpreting §§ 340, 316(a), and 317 of the 1958 Alabama Code, concluded that those sections applied to real estate transactions. When the State Legislature renumbered the

---

6. *See* Jan. 8, 1990, letter to Quality Mortgage from HUD, attached to memorandum in support of defendant's motion to dismiss, filed January 3, 1995. To be an approved mortgagee under the

National Housing Act, the mortgagee must the standards set forth in 12 U.S.C.A. § 1709 and 24 C.F.R. §§ 202.10–202.12.

Alabama Code, § 340 of the 1958 Code became § 5–19–31 of the 1975 Code; § 316 became § 5–19–1; and § 317 became § 5–19–3. The substance of those sections did not change when they were renumbered. Thus, when the *Fletcher* court held that §§ 316(a) and 317 applied to real estate transactions, it applied to a real estate transaction those sections of the statute which the legislature had indicated should apply to real estate transaction. Thus, the court was merely enforcing the statute as written; it did not hold that all of what is now Chapter 19 of Title 5 applied to real estate transactions. Indeed, the court in *Fletcher* relied on "the express language of the [chapter]" to conclude that §§ 316(a) and 317 applied to real estate transactions. *Id.* at 53.[7] However, the express language of § 5–19–31 provides that, unless § 5–19–1 or § 5–19–3 is at issue, Chapter 19 does not apply to real estate transactions if the mortgagee is approved under the National Housing Act. Thus, even if the Willises were able to prove that their mortgage agreement included a penalty for prepayment, they would be unable to recover because § 5–19–4(c) does not apply to real estate transactions involving a mortgagee approved by the National Housing Act.[8]

Accordingly, it is ORDERED that the motion to dismiss filed by defendant Quality Mortgage USA, Inc. on December 12, 1994, is granted.[9] However, this order will not result in a dismissal of this lawsuit because plaintiffs James R. and Alice G. Willis have amended their complaint to assert additional claims.

---

7. The plaintiffs also rely on *Smith v. First Family Fin. Serv.*, 626 So.2d 1266 (Ala.1993), for the proposition that chapter 19 applies to real estate transactions. Although the *Smith* court wrote that chapter 19 applies to real estate transactions, *id.* at 1271, it was again interpreting a section—5–19–4(g)—which expressly applies to real estate transactions. Section 5–19–4(c), the section at issue in this case, does not expressly apply to real estate transactions.

8. In their complaint, the Willises allege that imposing a prepayment penalty violates the law of other unnamed states. Because the court has certified no class, and the Willises' transaction took place in Alabama, the court has considered this claim only as it relates to Alabama law.

9. The Willises have contended, in briefs and other submissions, that their transaction with Quality Mortgage also involved a form of fee splitting or referral. They have not, however, alleged such in their complaint, either as originally filed or as amended.