In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4087

Francisco J. Echevarria, Barbara Echevarria
and Bobbie L. Hall,

Plaintiffs-Appellants,

v.

Chicago Title & Trust Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3949--James B. Zagel, Judge.

Argued May 8, 2001--Decided July 5, 2001


   Before Bauer, Posner, and Coffey, Circuit
Judges.

   Bauer, Circuit Judge.  Plaintiffs, home
buyers who hired Chicago Title & Trust
Company to record their home deeds and
mortgages, sued Chicago Title claiming
that it violated sec. 8(b) of the Real
Estate Settlement Procedures Act
("RESPA"), 12 U.S.C. sec. 2607(b), by
unlawfully splitting fees with the Cook
County Recorder. Chicago Title charged
Francisco and Barbara Echevarria $25.00
to record their deed and $45.00 to record
their mortgage. This charge did not match
the Cook County Recorder's fees. The
County Recorder required $25.00 to record
the Echevarrias' deed, but only $31.00 to
record their mortgage. Chicago Title
pocketed the $14.00 overcharge.
Similarly, Chicago Title charged Bobbie
Hall $25.00 to record her deed and $45.00
to record her mortgage. While the Cook
County Recorder charged $25.00 to record
Hall's deed, it only required $37.00 to
record her mortgage. Again, Chicago Title
kept the extra $8.00.

   The Echevarrias and Hall filed a three-
count complaint in federal court. They
styled their only federal claim under
RESPA sec. 8(b), accusing Chicago Title
of splitting this amount with the Cook
County Recorder by paying the recorder

its fee and pocketing the overage. Further, plaintiffs brought two state law fraud claims, which we do not address. Plaintiffs then filed a motion to have the case certified as a class action.

Less than a month later, Chicago Title asked the court to dismiss the suit under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Chicago Title argued that plaintiffs failed to state facts tending to prove that Chicago Title gave an unearned fee to a third party or received an unearned fee from a third party, an essential element of the RESPA claim. As support, Chicago Title relied on Durr v. Intercounty Title Co., 14 F.3d 1183 (7th Cir. 1993) cert. denied 513 U.S. 811 (1994), in which we held on very similar facts that the challenged behavior did not constitute fee splitting under RESPA sec. 8(b). Believing himself to be bound by this precedent, the district judge dismissed the RESPA claim. In addition, he dismissed both state law claims because the parties were not diverse and, absent the RESPA claim, the court lacked subject-matter jurisdiction. We affirm the district court's dismissal.

We review de novo a dismissal for failure to state a claim. See Transit Express, Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001) (citation omitted). Dismissal for failure to state a claim is proper only where the court is convinced, beyond a reasonable doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Szumny v. American Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001) (citation omitted). We accept well-pled factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. See Transit Express, 246 F.3d at 1023 (citation omitted).

Plaintiffs appeal the dismissal of their claims, taking two approaches. First, they attempt to distinguish their case from Durr and argue that they stated facts showing illegal fee splitting. Second, they contend that even if they failed to state facts showing a splitting of fees, their claim should not have been dismissed because fee splitting is no longer an element of RESPA sec. 8(b). Plaintiffs reason that since the events in Durr, HUD eliminated this element by (1) amending Regulation X, 24 C.F.R. sec.

3500.14, and (2) issuing two opinion letters and one special information booklet to that effect.

## A. Durr v. Intercounty Title

RESPA sec. 8(b) states:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. sec. 2607(b). Plaintiffs and Chicago Title read the statute quite differently. Chicago Title urges that to avoid dismissal, plaintiffs must state facts showing that Chicago Title either received unearned fees from or paid unearned fees to a third party, here, the County Recorder. This is the position we took in Durr, 14 F.3d at 1186-87. Chicago Title argues that because it received the extra money from plaintiffs and kept these overcharges itself, rather than sharing them with a third party, there was no split. Plaintiffs, however, focus on the whole $45.00 Chicago Title charged as the purported mortgage filing fees. According to plaintiffs, the $45.00 was illegally split when Chicago Title paid a third party, the County Recorder, a portion of the fees ($31.00 and $37.00), and retained the overcharges ($14.00 and $8.00) for itself. Plaintiffs attempt to distinguish their situation from that in Durr.

The facts in Durr are virtually identical to the facts in this appeal. In Durr, Intercounty Title Company charged the plaintiff $25.00 to record the deed and $37.00 to record the mortgage of his new home, amounts which, after subtracting the County Recorder's fees and Intercounty's document-handling charge, resulted in an overcharge of roughly $8.00. See 14 F.3d at 1184. Intercounty pocketed this overage. See id. at 1184-85. Because Intercounty did not give unearned fees to or accept unearned fees from a third party, we held that Intercounty merely received a "windfall" and did not violate RESPA sec. 8(b) when it pocketed the overcharge. See id. We did not count the County Recorder

as a third party for purposes of RESPA sec. 8(b) because it had no involvement whatsoever with the unearned fees. We reached the same result in Mercado v. Calumet Fed. Sav. & Loan Ass'n, 763 F.2d 269, 270-71 (7th Cir. 1985) (affirming the dismissal under Fed. R. Civ. P. 12(b)(6) of a RESPA sec. 8(b) claim because "the complaint [did] not allege that [the defendant] gave or received 'any portion, split, or percentage of any charge' to a third party.").

We are unable to distinguish the case at hand from Durr. As in that case, plaintiffs have failed to plead facts tending to show that Chicago Title illegally shared fees with the County Recorder. The Cook County Recorder received no more than its regular recording fees and it did not give to or arrange for Chicago Title to receive an unearned portion of these fees. The County Recorder has not engaged in the third party involvement necessary to state a claim under RESPA sec. 8(b).

Plaintiffs also cite to United States v. Gannon, 684 F.2d 433, 438-39 (7th Cir. 1981) (en banc) cert. denied 454 U.S. 940 (1981), in which we held that under certain circumstances, one party could act as both the giver and acceptor of an illegal split for RESPA purposes. In Gannon, an employee in the County Recorder's office, acting in his capacity as the County's agent, charged banks a gratuity for "prompt service" in addition to the regular filing fee and pocketed the tip. See id. at 436. We found that these gratuities were an unearned regular portion of recording fees charged by the employee in his official capacity and accepted by him in his individual capacity. See id. at 438. The case at issue, however, is easily distinguished from Gannon. Here, Chicago Title collected the fees from plaintiffs in its capacity as a title company and retained the overcharges in that same capacity. We cannot employ a legal fiction to treat Chicago Title as both the giver and third party receiver of unearned fees because it acted in the same legal capacity when it overcharged plaintiffs and when it retained the monies in excess of the recording fees.

Plaintiffs further direct our attention to a RESPA sec. 8(b) case that a district

court refused to dismiss because the plaintiffs successfully marshaled evidence showing a "split." See Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D. Ill. 2000). Christakos is also distinguishable. In Christakos, Intercounty Title was responsible for handling the paperwork associated with refinancing a home loan. See id. at 499-500. The bank holding the initial mortgage agreed to file the paperwork to release the mortgage, but Intercounty Title charged the plaintiff to have the mortgage released twice, once by the bank and once by Intercounty. See id. at 500. The court found that plaintiffs alleged a split because Intercounty shared the fee with a third party, the bank. See id. at 503. The district court made a point of stating:

The weight of Seventh Circuit case law requires payment to a third party to trigger 2607(b). . . . To the extent [plaintiff] argues to the contrary, that any unearned fee violated RESPA, she is wrong and her argument is rejected.

Id. at 503 & n.4. There is no third party in the case before us. Because plaintiffs fail to accuse a third party of accepting unearned fees, Durr compels the dismissal of their RESPA claims.

This result makes sense considering not only RESPA's plain language, but its intended purpose. We stated in Durr:

At its core, 'RESPA is an anti-kickback statute.' Mercado v. Calumet Fed. Sav. & Loan Ass'n, 763 F.2d 269, 270-71 (7th Cir. 1985). Its purpose is to 'prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' [is] furnished for the referral of real estate settlement business.' Id. (quoting Senate Report).

14 F.3d at 1186. If we subjected to RESPA liability a title company that kept an overcharge without requiring allegations that it shared an unearned fee with a third party, we would radically, and wrongly, expand the class of cases to which RESPA sec. 8(b) applies.

B. Regulation X

Perhaps anticipating the above result,

plaintiffs argue that a HUD amendment to regulation 24 C.F.R. 3500.14(c) (also called "Regulation X"), which became effective after the events in Durr, eliminates the need to plead facts suggesting that defendants split an unearned fee with a third party. 12 U.S.C. sec. 2617(a) bestows upon HUD broad power to "prescribe such rules and regulations, [and] to make such interpretations . . . as may be necessary to achieve the purposes of this chapter." We must give effect to a regulation promulgated under such a broad grant of power provided it is "reasonably related to the purpose of the enabling regulation." Mourning v. Family Publ'n Serv., Inc., 411 U.S. 356, 369 (1972). Regulation X now reads:

(c) No split of charges except for actual services performed. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section. The source of the payment does not determine whether or not a service is compensable. Nor may the prohibitions of this part be avoided by creating an arrangement wherein the purchaser of services splits the fee.

24 C.F.R. sec. 3500.14(c) (2000)./1 Plaintiffs argue that the second sentence, added in 1992, expanded RESPA liability to all unearned fees such that stating a fee split with a third party is no longer a necessary element of a RESPA sec. 8(b) claim. We are mindful of the holding in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., which requires us to defer to an agency's regulations, unless they are contrary to clear congressional intent, when Congress has not addressed the relevant issue or has done so ambiguously. See 467 U.S. 837, 842-43 (1983). Rather than addressing Chevron deference, however, we dispose of this issue on an alternate ground that was the focus of the parties' briefs: the meaning of the Regulation X amendment and whether it would remove the fee-splitting requirement should it be

entitled to deference.

Plaintiffs argue that the second sentence's plain language clearly removes the need to charge "some type of 'split' or 'sharing' of fees . . . ." Chicago Title counters by relying on the only case to address the effect of the Regulation X amendments on the requirement that a third party be involved in an illegal fee split. See Willis v. Quality Mortgage U.S.A., Inc., 5 F. Supp. 2d 1306, 1308-09 (M.D. Ala. 1998). We find the Willis reasoning persuasive and we adopt it. Evaluating the same argument plaintiffs make to us, the Willis court held that the amendments to Regulation X did not scrap the third party fee-splitting element of a RESPA sec. 8(b) claim. The Willis court evaluated the amendments to Regulation 3500.14(c) in context, reading the subsection as a whole. See id. at 1309 ("The court may not, by concentrating on one sentence and ignoring its context, create an entirely new zone of proscribed conduct."). In light of this reading, it concluded: "[S]ubpart (c) of Regulation 3500.14 prohibits . . . payments for which no services are performed only if those payments are split with another party." Id. We note further that the new heading added by the 1992 amendments, "No split of charges except for actual services performed," expresses clearly that HUD did not attempt to expand liability past situations involving fee splitting between the fee collector and a third party. The Willis court noted that HUD's stated purpose for amending Regulation 3500.14 was "to clarify what constitutes payments and services." Id. (quoting 57 Fed. Reg. 49,605 (Nov. 2, 1992)). Neither HUD's purpose nor the new language explicitly refers to expanding liability under RESPA sec. 8(b), and given the repeated reference to fee splitting and the purpose of the amendment, we hold that the amendments to Regulation X did not eliminate the requirement of third party fee splitting.


C.  Opinion Letters and Special Information Booklet

Again relying on the HUD Secretary's authority to promulgate rules, regulations, and interpretations necessary to achieve the purposes of

RESPA, 12 U.S.C. sec. 2617, plaintiffs argue that the statements of HUD policy contained in two opinion letters and one special information booklet express HUD's intent to remove fee splitting as a required element of RESPA sec. 8(b). The district court refused to consider these statements because they are ultra vires. HUD's regulations themselves state clearly in a section entitled "Reliance upon rule, regulation or interpretation by HUD" that HUD opinion letters and information booklets do not constitute rules, regulations, or interpretations of the Secretary for purposes of RESPA. See 24 C.F.R. 3500.4(a)(ii)(2). The regulation proceeds to warn that reliance on unofficial statements such as these will not constitute a defense to a RESPA violation. See 24 C.F.R. 3500.04(b). We are extraordinarily reluctant to follow unofficial interpretations which the agency itself does not view as binding.

Recent Supreme Court precedent validates our reluctance. In Christensen v. Harris County, the Supreme Court distinguished between the deference due regulations promulgated by formal notice-and-comment rulemaking or formal adjudications and those made informally. See 120 S. Ct. 1655, 1662 (1999). It stated:

Interpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant Chevron-style deference. . . . Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140 . . . (1944), but only to the extent that those interpretations have the "power to persuade."

Id. The Court goes on to note an exception to this rule; when the language of a regulation is ambiguous, we defer to otherwise non-binding interpretations to allow the agency to interpret its own regulations. See id. (citing Auer v. Robbins, 519 U.S. 452 (1997)). Although plaintiffs cite a number of other cases holding that we must defer to agency policy statements unless they are "demonstrably irrational," those cases either deal with rules made through formal procedures see Lifanda v. Elmhurst

Dodge, Inc., 237 F.3d 803, 809 (7th Cir. 2001) (discussing a final rule which amended a regulation); special cases, see, e.g., Stinson v. United States, 508 U.S. 36, 44-45 (1993) (holding that amendments to the Sentencing Guidelines Commentary should be treated as legislative rule-making due to a unique grant of power from Congress), or precedent superceded by Christensen. Plaintiffs argue that RESPA creates ambiguity by not expressly defining who a third party is in illegal fee splitting, or how it triggers liability, but they do not argue or point to any cases stating that Regulation X is ambiguous. Reviewing the language and the stated purpose of Regulation X, we conclude that it is not ambiguous, and we therefore owe the opinion letters and special informational booklet no extra deference.

Two of the policy statements petitioners reference tend to support their position. One states in part:

It is also illegal for anyone to accept a fee or part of a fee for services if that person has not actually performed settlement services for the fee. For example, a lender may not add to a third party's fee, such as an appraisal fee, and keep the difference.

62 Fed. Reg. 31982, 31998 (June 11, 1997). The second opines that it is illegal for a settlement service provider to mark up a third party's fees for the purpose of making a fee without providing any goods or services in return. See 2000 FDIC Interp. Ltr. LEXIS 39, *24-*27. However, we have analyzed RESPA sec. 8(b) and rejected this position as expanding RESPA liability past the point authorized by Congress. See Mercado, 763 F.2d 269, 270-71. As we stated that case:

Doubtless RESPA is a broad statute, directed against many things that increase the cost of real estate transactions. . . . But the objective of a statute is not a warrant to disregard the terms of the statute. Congress always has some objective in view when it legislates, and it is always possible to move a little farther in the direction of that objective. The fact that Congress has pointed in a particular direction does not authorize a court to march in that direction without limit.

Id. at 271. Absent a formal commitment by HUD to an opposing position, we decline to overrule our established RESPA sec. 8(b) case law.

   We AFFIRM the district court's dismissal with prejudice of plaintiffs' RESPA claim under Fed. R. Civ. P. 12(b)(6) and its dismissal of the state claims for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

FOOTNOTES

/1 Before it was amended, Regulation X read:

No person shall give and no person shall accept any portion, split, or percentage of any change made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. 24 C.F.R. 3500. 14(b) (1992).