# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2801

GREGORY & MARGARET WEIZEORICK, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

v.

ABN AMRO MORTGAGE GROUP, INCORPORATED,
A DELAWARE CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 0713—**William J. Hibbler**, *Judge.*

ARGUED JANUARY 15, 2003—DECIDED JULY 24, 2003

Before MANION, KANNE, and DIANE P. WOOD, *Circuit Judges.*

MANION, *Circuit Judge.*

## I.

On February 1, 2001, Gregory and Margaret Weizeorick filed suit alleging that ABN AMRO Mortgage Group Inc. violated the Real Estate Settlement Procedures Act, 12

U.S.C. § 2601, *et seq.*, and state law provisions, by illegally splitting a fee with the closing agency without performing any services. The district court determined that no fee split had occurred as a matter of law and dismissed their federal allegations for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Weizeoricks appeal, and because they successfully pleaded a claim for relief, we reverse.

## II.

On July 24, 2000, Gregory and Margaret Weizeorick closed on the sale of their home in Chicago, Illinois. In connection with the closing and the repayment of their mortgage, ABN AMRO Mortgage Group ("AAMG"), as holder of the mortgage, provided the Weizeoricks and the closing company with a "Payoff Statement" on July 18, 2000. The Payoff Statement included a charge of $10.00 for a "Recording Discharge/Release of Lien Fee." The Weizeoricks paid this fee at the closing of the sale of their home as part of the payoff of their mortgage loan. Also at closing, the Weizeoricks were charged a "Release Fee" of $25.60 by the closing company, Attorneys' Title Guaranty Fund, Inc, as part of the "settlement charges" owed as the seller of the home. The Weizeoricks paid that fee as well.

On February 1, 2001, the Weizeoricks filed a class action lawsuit alleging that AAMG's practice of collecting $10.00 for "recording" services from borrowers at the closing on the sale of their homes violates the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, as well as state law. Specifically the Weizeoricks invoked Section 8(b) of RESPA, or 12 U.S.C. § 2607(b), which prohibits the receipt of a portion of a fee paid for real estate services without actually performing the service. *Id.* The

Weizeoricks alleged that AAMG violated RESPA and Illinois state law by receiving $10.00 of the $35.60 fee for recording the discharge of their lien, even though AAMG did not record the release of the mortgage. According to the Weizeoricks' allegations, the title company, not AAMG, recorded the discharge/release of their mortgage.

AAMG subsequently moved to dismiss the Weizeoricks' entire complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Weizeoricks withdrew their motion for class certification, likely because of the unique and somewhat complex series of transactions that occurred between the closing company and the title company. They instead proceeded as individual plaintiffs. On November 16, 2001, the district court, relying on *Echevarria v. Chicago Title and Trust Co.*, 256 F.3d 623 (7th Cir. 2001), dismissed the Weizeoricks' RESPA claim with prejudice, finding that the Weizeoricks had failed to allege that AAMG had illegally split fees with the closing agent. The district court determined that because the title company and AAMG had each independently charged the Weizeoricks a standard fee for the recording service, there was no split of an unearned fee to a third party, as required by the statute. The Weizeoricks then moved to reconsider the dismissal of the RESPA claim and AAMG contemporaneously moved under 28 U.S.C. § 1367(c)(3) to dismiss the Weizeoricks' state law claims. The district court denied the Weizeoricks' motion, granted AAMG's motion, and dismissed the Weizeoricks' case in its entirety.

## III.

On appeal, the Weizeoricks contend that the district court erred in dismissing their claim against AAMG because their allegations were sufficient to state a claim under

§ 2607(b) of RESPA.[1] They contend that the district court impermissibly interpreted § 2607(b) by requiring a plaintiff to allege that the defendant arranged for a third party to receive unearned fees in order to show a violation of the statute. The district court erred in this conclusion, they argue, because § 2607(b) of RESPA only prohibits a person from accepting an unearned portion of a charge for settlement services and does not require an allegation of whether or not the defendant had control of the settlement fee overcharge.

This court reviews *de novo* the district court's grant of AAMG's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

To determine if dismissal was appropriate in this case we turn to the statutory basis for the Weizeoricks' suit. Section 8(b) of the RESPA provides:

> **Splitting charges.** No person shall give and no person shall accept any portion, split, or percentage of any

---

[1] The Weizeoricks only appeal that part of the district court's November 16, 2001 order and opinion granting AAMG's Fed. R. Civ. P. 12(b)(6) motion to dismiss the Weizeoricks' federal law claim, which arose under RESPA, and that part of the district court' s June 25, 2002 order denying the Weizeoricks' motion to reconsider the dismissal of the RESPA claim. The June 25, 2002 order also granted, pursuant to 28 U.S.C. § 1367(c)(3), AAMG's motion to dismiss the remainder of the Weizeoricks' claims, all of which arose under state law. The Weizeoricks have not appealed the dismissal of their state law claims.

charge made or received for the rendering of a real
estate settlement service in connection with a transac-
tion involving a federally related mortgage loan other
than for services actually performed.

12 U.S.C. § 2607(b).

The initial question then is whether Section 8(b) pro-
hibits a party to a real estate transaction from simply
accepting an unearned fee, or does it require that the
unearned amount be part of a split or percentage of a
charge. This court has explained that Section 8(b), en-
titled "Prohibition against kickbacks and unearned fees," is
an anti-kickback measure that prohibits real estate settle-
ment overcharges when a "portion" or "percentage" of the
charge is kicked back to or "split" with a third party who
performs no service.

> The statutory language describes a situation in which A
> charges B (the borrower) a fee of some sort, collects
> it, and then either splits it with C or gives C a portion
> or percentage (other than 50 percent—the situation
> that the statutory term "split" most naturally describes)
> of it. A might be a lawyer, and C a closing agent . . ., and
> A might charge a legal fee to B and kick back a share
> of it to C for recommending to the borrower that he
> use A's services. That would be a form of commercial
> bribery and is the target of section 8(b).

*Kzralic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002).
Our case law has consistently held that Section 8(b) is
not violated unless the defendant splits a fee with a third
party. *Kzralic*, 314 F.3d at 881; *Echevarria v. Chicago Title &
Trust Co.*, 256 F.3d 623, 627 (7th Cir. 2001); *Mercado v.
Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 270 (7th Cir.
1985). We have stressed that "under RESPA's express
terms," the broad protection of the statute "extends only

over transactions where the defendant gave or received any portion, split, or percentage of any charge to a third party." *Durr v. Intercounty Title Co.*, 14 F.3d 1183, 1187 (7th Cir. 1994) (internal quotation omitted). For example, in *Echevarria*, we affirmed dismissal under Fed. R. Civ. P. 12(b)(6) when the plaintiffs failed to plead facts tending to show the third-party involvement required for a Section 8(b) claim. *Echevarria*, 256 F.3d at 626. There, the plaintiffs alleged that the Chicago Title and Trust Co. had overcharged them for the recording service, and then split this amount with the Cook County Recorder by paying the recorder its fee and pocketing the overage. *Id.* at 625. We held that Section 8(b) did not apply because the title company both collected and retained fees from the plaintiffs in the same capacity. *Id.* We noted that if we subjected a settlement service provider to RESPA liability for keeping an overcharge without requiring an allegation that the unearned fee was shared with a third party, "we would radically, and wrongly, expand the class of cases to which RESPA applies." *Echevarria*, 256 F.3d at 627. Therefore, insofar as the Weizeoricks argue that liability attaches to AAMG under Section 8(b) simply for accepting an overcharge as part of a real estate settlement transaction, they are incorrect. A well-pleaded complaint based upon a violation of Section 8(b) must allege that the defendant shared an unearned fee with a third party to the real estate transaction. *Echevarria*,256 F.3d at 627. *See also, Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002).[2]

---

[2] We also do not defer, as the Weizeoricks would have us, to the Department of Housing and Urban Development's (HUD) policy statement on this provision. *See Real Estate Settlement Procedures Act Statement of Policy* 2001-1, 66 Fed.Reg. 53052, 53057

(continued...)

In response, the Weizeoricks argue that even if they cannot succeed by merely challenging AAMG's receipt of an unearned fee, they have nonetheless alleged a fee split consistent with the statute. In support of this position the Weizeoricks direct our attention to a similar Section 8(b) case where a district court denied a motion to dismiss where the plaintiffs alleged a similarly atypical fee-split. *See Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D. Ill. 2000). In *Christakos*, the title company, Intercounty Title, was responsible for handling the paperwork associated with refinancing a home loan. *Id.* at 499-500. The bank holding the initial mortgage agreed to file the paperwork to release the mortgage, but Intercounty Title twice charged the plaintiff to have the mortgage released, once by the bank and once by Intercounty. *Id.* at 500. However, only the bank actually prepared and filed the release. The court found that the plaintiffs successfully alleged a split in violation of Section 8(b) because Intercounty shared the fee with a third party, the bank. *See id.* at 503. Specifically the court found that the two recording fee payments "were made from the same pool of funds from the loan proceeds over which [the title company], as settlement agent, had control" and from which it directed payments to be made. *Christakos*, 196 F.R.D. at 503. *Christakos* is not in conflict with *Echevarria*, in that the plaintiff alleged that the defendant in *Christakos* shared an unearned fee with a third party involved in the real estate transaction. Intercounty Title did not merely accept an unearned fee,

---

[2] (...continued)
(Oct. 18, 2001). We have previously declined to defer to HUD's interpretation of Section 8(b), since the statute is clear on its face and HUD's statement was adopted without any formal rule-making procedures. *Kzralic*, 314 F.3d at 881.

but instead accepted fees for a single service, and split that fee with a third party, who then performed the service.

Against this backdrop we review the Weiezoricks' complaint. Significantly, the Weizeoricks allege that AAMG violated RESPA because they received a $10.00 fee to record the release of the Weizeoricks' mortgage, even though the release was recorded by the closing company, and the closing company received a separate fee for its services. For purposes of this 12(b)(6) determination, we need to examine the "Payoff Statement" and the "Settlement Statement" referenced in the Weizeoricks' complaint.[3] This will bring into focus the exact nature of the alleged transaction between the Weizeoricks, the closing company and AAMG. According to the Settlement Statement, the Weizeoricks' return from the sale of their house was subject to several different reductions upon closing. First, the Weizeoricks were charged a "RELEASE FEE" of $25.60 as part of their $8063.00 in settlement charges. This group of charges was accepted by the closing company and was listed on the "Settlement Statement" as "Settlement charges to the seller." In addition, they were charged $92,483.12 as a "Payoff of first mortgage loan." This figure was supplied to the closing company by AAMG through a "Payoff Statement."[4] Included in this figure was a "Record

---

[3] Fed. R. Civ. P. 10(c) provides "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *See also Rosenblum v. Travelbyus.com Ltd.*, 299 F. 657, 660 (7th Cir. 2002).

[4] The actual figure supplied to the title company by AAMG was $92,447.92, but with a provision that the amount would be adjusted by a per diem interest rate of $17.60. If we add two days of per diem interest added to the total supplied in the

(continued...)

ing discharge/release of Lien Fee" of $10.00 as well as "Fax Fees" of $15.00. Thus, the Weizeoricks allege they were charged a total of $35.60, $10.00 paid to AAMG and $25.60 paid to the closing company, for the single service of recording the release of the lien on their title.

If we draw all reasonable inferences from these allegations in the Weizeoricks' favor, *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992), the Weizeoricks have successfully alleged a split of fees in violation of RESPA section 8(b). Unlike *Echevarria*, there are three parties to this real estate transaction: the Weizeoricks, AAMG and the closing company. We can reasonably infer from the complaint and attached documents that the closing company made the payment of the $10.00 for the recording of the release to AAMG from the pool of funds involved in the transaction. According to the documents, the closing company also made a payment to the Weizeoricks that represented their return on the sale of their house, less the closing company's recording fee. AAMG, therefore, allegedly received a $10.00 split of the recording fee from the closing company, even though they did not record the release. As AAMG notes, this case does differ slightly from *Christakos.* AAMG, the named defendant here, is the entity that received the unearned payment for allegedly performing no service. In *Christakos*, it was the closing company that had control over the funds and paid out the fee split. However, this is a distinction without a difference because the statute does not place liability on only the entity who pays out the alleged kickback, but instead places liability on both the giver and receiver of

---

[4] (...continued)
payoff statement, or $35.20, we arrive at the settlement statement's figure of $92,483.12.

an unearned kickback.[5] Therefore, the defendant in a Section 8(b) cause of action need not be the party who had control over the split fees, as long as a fee split is alleged. Nor does the statute require that the plaintiff allege that all of the parties involved in the fee splitting have knowledge of their participation in, or a conspiracy to join in, an illegal arrangement. *Christakos*, 196 F.R.D. at 503. The Weizeoricks' allegation could be interpreted in a way that AAMG is itself the third party involved in the fee split, because AAMG accepted an allegedly unearned portion of a recording fee from the title company, who also kept part of the charged fee and actually performed the service of recording the release. If this angle is pursued, the district court will need to sort out any facts that would substantiate such an interpretation.

Pursuant to Section 8(b), the Weizeoricks must also allege the fee was collected "other than for services actually performed." 12 U.S.C. § 2607(b). Because the Weizeroicks allege that the title company, and not AAMG, recorded the release of the lien, the $10.00 fee collected by AAMG may have been unearned and therefore their complaint satisfies the statutory requirement. However, on appeal, the Weizeoricks conceded that AAMG prepared and delivered the lien release to the title company. It is possible that AAMG's $10.00 fee was incurred for the prepara-

---

[5] "No person shall give *and no person shall accept* any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . ." 12 U.S.C. § 2607(b). In addition to civil penalties, *RESPA* also establishes criminal sanctions for violations, including up to one year in prison. These penalties provide that both the giver and the acceptor of the unearned fees are jointly and severally liable. *See* 12 U.S.C. § 2607(d)(1)-(2).

tion or delivery of the release. It is also possible that AAMG charged for that service elsewhere in the "Payoff Statement," for example as a "Fax Fee." Moreover it is not entirely clear, based on the settlement statement, that the Weizeoricks themselves paid for the entirety of the recording fees. The buyer of the house was also charged $71.00 in recording fees, according to the settlement statement, a charge which may have also included the release fee. Every real estate closing is a unique series of fees, payments and other monetary transactions between at least one lender, a buyer, a seller and a closing company which raises numerous individualized questions just like these. However, those and any related questions are better answered through discovery, because if we confine our review to the complaint, the Weizeoricks have successfully alleged that a third party to their real estate transaction accepted a portion of a fee that was unearned in violation of 12 U.S.C. § 2607(b).

## IV.

In conclusion we find that the district court erred in denying the Weizeoricks' RESPA claim based on the court's conclusion that the Weizeoricks failed to plead that AAMG controlled the settlement process and knew that the title company was recording the release of mortgage. Neither is an element of a claim under 12 U.S.C. § 2607(b). The dismissal of the Weizeoricks' RESPA claim with prejudice is therefore REVERSED and REMANDED for further proceedings.

A true Copy:

     Teste:

                              _____

                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*