**Brian D. HAEHL and Vera Quinn, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**WASHINGTON MUTUAL BANK, F.A., Washington Mutual, Inc., Defendants.**

**No. 4:02–CV–225–DFH.**

United States District Court, S.D. Indiana, New Albany Division.

Aug. 12, 2003.

J. Spencer Harmon, Stites & Harbison, LLP, Jeffersonville, IN, K. Gregory Haynes, John W. Woodard, Jr., Michelle D. Wyrick, Wyatt, Tarrant & Combs, Louisville, KY, for Defendants.

Peter D. Palmer, Matthew J. Schad, Schad & Schad, New Albany, IN, for Plaintiffs.

## ENTRY ON MOTION TO DISMISS

HAMILTON, District Judge.

This putative class action challenges the lending practices of a federally chartered and regulated savings association. Named plaintiffs Brain D. Haehl and Vera Quinn assert that defendant Washington Mutual Bank, F.A. violated the anti-kickback and unearned fee provision of the federal Real Estate Settlement Practices Act ("RES-PA"), 12 U.S.C. § 2607, by charging and collecting "reconveyance" fees in connection with residential mortgages. In addition, plaintiffs allege state law claims for (1) fraud; (2) concealment, nondisclosure, and breach of a duty of good faith and fair dealing; (3) breach of fiduciary duty; (4) unjust enrichment; (5) conversion; and (6) violation of the Indiana Consumer Credit Code, Ind.Code § 24–4.5–2–202.

Washington Mutual Bank has moved to dismiss plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Washington Mutual Bank contends that plaintiffs have failed to allege a violation of RESPA and that plaintiffs' state law claims are preempted by the regulations promulgated pursuant to the federal Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 *et seq.* In addition, defendant Washington Mutual, Inc. contends that it should be dismissed as a party to this suit. As explained below, the court grants the motion to dismiss.[1]

1. Although Rule 23(c)(1) of the Federal Rules of Civil Procedure currently requires that any

*Dismissal Standard Under Rule 12(b)(6)*

For purposes of a motion to dismiss under Rule 12(b)(6), the court takes as true the factual allegations of the party asserting the claims and draws all reasonable inferences in favor of that party. *Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 853 (7th Cir. 1999). "Dismissal for failure to state a claim is proper only where the court is convinced, beyond a reasonable doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 625 (7th Cir.2001) (affirming dismissal of claims under RESPA).

*Factual Allegations*

Taking the well-pleaded factual allegations as true, plaintiffs Haehl and Quinn obtained residential mortgages from Washington Mutual Bank, F.A., a federally chartered savings association. Washington Mutual Bank charged plaintiffs a "reconveyance fee" despite the fact that they never conveyed their property interests to Washington Mutual Bank, so there was no reconveyance at all. Plaintiffs assert that Washington Mutual Bank, by charging the reconveyance fee, collected additional monies from its customers without providing any additional services. Plaintiffs also allege that Washington Mutual Bank included the reconveyance fee in the mortgage documents so that customers would believe that the payment was for services authorized or required by law.[2]

*Discussion*

**I. The Federal Claim Under RESPA**

Washington Mutual Bank is entitled to dismissal of the RESPA claim because plaintiffs have not alleged that it accepted a kickback or split an unearned fee with a third party. RESPA prohibits the payment of kickbacks and unearned fees in real estate settlements that involve a "federally related mortgage loan." 12 U.S.C. § 2607; *Echevarria v. Chicago Title & Trust Co.,* 256 F.3d 623, 627 (7th Cir.2001). Plaintiffs have alleged that in charging reconveyance fees, Washington Mutual Bank was collecting unearned fees, which they argue constitutes a *per se* violation of RESPA. Am. Cplt. ¶¶ 40–41.

"At its core, 'RESPA is an anti-kickback statute.' ... Its purpose is to 'prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' [is] furnished for the referral of real estate settlement business.'" *Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1186 (7th Cir.1994), quoting *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 270–71 (7th Cir.1985), in turn quoting S.Rep. 93–866, 93d Cong., 2d Sess.

issue of class certification be resolved "as soon as practicable," it is not improper for a defendant in a putative class action to seek dismissal or summary judgment—and for the court to grant such a motion—on the ground that plaintiffs' claims lack merit. See, *e.g., Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir.1995) ("Class actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action. A decision that the claim of the named plaintiffs lacks merit ordinarily ... disqualifies the named plaintiffs as proper class representatives" and moots the question of class certification.).

**2.** Plaintiffs' amended complaint does not distinguish between Washington Mutual Bank, F.A. and its parent company, Washington Mutual, Inc., which has also been named as a defendant. Washington Mutual, Inc. is entitled to dismissal because the plaintiffs' Exhibit 1 identifies the lending entity as Washington Mutual Bank, F.A., and because plaintiffs have not alleged any circumstances that would justify piercing the corporate veil between parent and subsidiary. See, *e.g., Conomos v. Chase Manhattan Corp.*, 1998 WL 118154, *3 (S.D.N.Y.1998) (dismissing RESPA claims against lender's parent corporation).

(1974), reprinted in 1974 U.S.Code Cong. & Admin.News 6551. Section 2607(a) prohibits a person from giving or receiving "any fee, kickback, or thing of value pursuant to any agreement or understanding ... [that is] a part of a real estate settlement service involving a federally related mortgage loan ..." 12 U.S.C. § 2607(a). Section 2607(b) prohibits fee splitting and provides that no person shall give or receive "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service...." 12 U.S.C. § 2607(b). As the Seventh Circuit noted in *Krzalic v. Republic Title Co.:*

> The statutory language describes a situation in which A charges B (the borrower) a fee of some sort, collects it, and then either splits it with C or gives C a portion or percentage (other than 50 percent—the situation that the statutory term "split" most naturally describes) of it. A might be a lawyer, and C a closing agent like Republic Title, and A might charge a legal fee to B and kick back a share of it to C for recommending to the borrower that he use A' s services. That would be a form of commercial bribery and is the target of section [2607(b)].

314 F.3d 875, 879 (7th Cir.2002) (affirming dismissal for failure to state a claim where plaintiffs alleged that a $14 overcharge by defendant constituted an "unearned fee" under RESPA).

Plaintiffs do not allege or argue that Washington Mutual Bank received unearned fees from a third party or gave a kickback to a third party. Rather, plaintiffs contend that the Seventh Circuit has interpreted RESPA broadly enough to include claims involving "bogus" unearned fees even when such fees are not shared with third parties. Pl. Br. at 12. In support of this proposition, plaintiffs cite *United States v. Gannon,* 684 F.2d 433 (7th Cir.1981) (*en banc*). *Gannon* does not help plaintiffs here.

In *Gannon,* a county employee in the recorder's office accepted payments in excess of the fee authorized by state law and pocketed the difference. The Seventh Circuit affirmed a criminal conviction for violation of RESPA. Although the court interpreted Congress' purpose broadly ("to stop *all* abusive practices that unreasonably inflate federally related settlement costs to the public"), the court explained that there was a limited set of circumstances in which a single individual or entity could violate RESPA: "We believe a single individual *can* violate § 2607(b) by receiving in his official capacity a 'charge' for the rendering of settlement services, but personally keeping a portion of the charge in fact for something other than performance of those services." *Id.* at 438 (emphasis in original). The court's reasoning in *Gannon* was premised on the dual public and private capacities in which the employee had acted, so that the official Gannon was splitting the fee with the private Gannon. Subsequent Seventh Circuit cases have limited *Gannon* to that situation, which does not apply here.

In *Echevarria v. Chicago Title & Trust Co.,* 256 F.3d 623, 626 (7th Cir.2001), the court clarified the holding of *Gannon.* In *Echevarria,* plaintiffs had accused their closing agent of overcharging them the recording fee and pocketing the difference in violation of RESPA's unearned fee provision. Plaintiffs relied on *Gannon.* In affirming the district court's dismissal of plaintiff's RESPA claim for failure to state a claim, the court distinguished *Gannon* on the basis that plaintiffs' closing agent had not "split the fee" by acting in a dual capacity:

> We found [in *Gannon*] that these gratuities were an unearned regular portion of recording fees charged by the employee

in his official capacity and accepted by him in his individual capacity. The case at issue, however, is easily distinguished from *Gannon*. Here, Chicago Title collected the fees from the plaintiffs in its capacity as a title company and retained the overcharges in that same capacity. We cannot employ a legal fiction to treat Chicago Title as both the giver and third party receiver of unearned fees because it acted in the same legal capacity when it overcharged plaintiffs and when it retained the monies in excess of the recording fees.

256 F.3d at 626. The court reasoned that subjecting to RESPA liability a company that kept an overcharge "without requiring allegations that it shared an unearned fee with a third party, [would be to] radically, and wrongly, expand the class of cases to which RESPA § 8(b) applies." *Id.* at 627.

After *Echevarria* was decided, the United States Department of Housing and Urban Development ("HUD") issued a policy statement disagreeing with the Seventh Circuit's decision in that case, stating that section 2607 is not "limited to situations where at least two persons split or share an unearned fee." HUD, *Real Estate Settlement Procedures Act Statement of Policy 2001–1*, 66 Fed.Reg. 53052, 53057 (Oct. 18, 2001), as quoted in *Krzalic v. Republic Title Co.*, 314 F.3d 875, 877 (7th Cir.2002) (affirming dismissal for failure to state a claim under RESPA). In *Krzalic*, the Seventh Circuit later considered and flatly rejected HUD's broad interpretation of RESPA. Homeowners alleged that their real estate closing agent violated RESPA when he charged them more for recording their mortgages than he was charged by the recorder. On appeal, HUD filed an *amicus* brief in support of the homeowners.

In rejecting HUD's arguments and affirming the district court's dismissal of the RESPA claim, the Seventh Circuit stated that even if HUD's interpretation were owed *Chevron* deference, "that deference is not total and as it happens section [2607(b)] of RESPA will not bear, as a matter of straightforward judicial interpretation ... the meaning that HUD wants to give it." *Krzalic*, 314 F.3d at 879. The court then stated that *Gannon* was the strongest case for plaintiffs and HUD, but that it was "not strong enough" because Gannon was "accepting in his personal capacity a portion of the fee that he was imposing in his official capacity. It was as if he had kicked back the difference." *Id.*

To allege a violation under § 2607(a) or (b) after *Gannon, Echevarria*, and *Krzalic*, a plaintiff must allege that a defendant received or was given a kickback or unearned fee from a third party, unless the defendant was acting in a dual capacity as in *Gannon*. See *Weizeorick v. ABN AMRO Mortgage Group, Inc.*, 337 F.3d 827, 829–31 (7th Cir.2003) ("A well-pleaded complaint based upon a violation of Section [2607(b)] must allege that the defendant shared an unearned fee with a third party to the real estate transaction."). Here, plaintiffs allege that Washington Mutual Bank charged an unearned fee and kept the proceeds of that fee for itself. There are no allegations that a third party was involved in the transactions or that defendant acted in both official and individual capacities. Plaintiffs therefore have failed to state a claim upon which relief may be granted under § 2607. See, *e.g., Echevarria*, 256 F.3d at 627 (affirming dismissal of plaintiffs' claim under § 2607(b) where plaintiffs failed to allege a third party accepted unearned fees), citing *Durr v. Intercounty Title Co.*, 14 F.3d 1183 (7th Cir.1994) (affirming dismissal of claim under § 2607(b) where it failed to allege that a third party accepted unearned fees). Accordingly, plaintiffs' RESPA claim must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. *State Law Claims*

Plaintiffs also have alleged a violation of the Indiana Consumer Credit Code–Credit Sales (Ind.Code § 24–4.5–2–202), and have asserted state common law claims for fraud; breach of fiduciary duty; concealment, nondisclosure and breach of the duty of good faith and fair dealing; unjust enrichment; and conversion. Defendant Washington Mutual Bank asserts that these claims are all preempted by federal law, which occupies the field of regulating lending by federal savings associations.

### A. *Supplemental Jurisdiction*

■ This court has jurisdiction over the state law claims by virtue of 28 U.S.C. § 1367(a), which provides that in any action in which the district court has original jurisdiction, the court may exercise supplemental jurisdiction over state law claims that are part of the same case or controversy as the federal claim. Pursuant to § 1367(a), "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir.1995), citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). When a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction or to relinquish jurisdiction over the supplemental claims. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir.1998).

■■ A district court should normally relinquish supplemental jurisdiction when all federal claims are dismissed before trial. *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 468 n. 23 (7th Cir.1990), citing *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. There are exceptions to this general rule, one of which applies here, "when a defendant argues that the pendent claim has been preempted by federal law." *DeBruyne*, 920 F.2d at 468 n. 23, citing *Graf v. Elgin, J. & E. Ry.*, 790 F.2d 1341, 1347 (7th Cir.1986) (district may retain supplemental jurisdiction in situations where "the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong") (internal citations omitted), quoting *Gibbs*, 383 U.S. at 727, 86 S.Ct. 1130. On the state law claims in this case, the decisive issue is an issue of federal law. It makes sense for this federal court to exercise supplemental jurisdiction to decide whether plaintiffs' state law claims are preempted by the federal Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*

### B. *12 C.F.R. § 560.2*

Through HOLA, Congress delegated to the Office of Thrift Supervision ("OTS") broad authority to regulate the lending and investment practices of federal savings associations. See 12 U.S.C. § 1464(a); *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161–62, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ("The broad language of § [1461(a)] expresses no limits on the Board's [now, OTS's] authority to regulate the lending practices of federal savings and loans;" "It would have been difficult for Congress to give the [OTS] a broader mandate."), quoting *Glendale Federal Savings & Loan Ass'n v. Fox*, 459 F.Supp. 903, 910 (C.D.Cal.1978). Pursuant to that grant of authority, the OTS has promulgated comprehensive regulations governing the operations of savings associations. See 12 C.F.R. § 560 *et seq;* see also *Kupiec v. Republic Federal Savings & Loan Ass'n*, 512 F.2d 147, 150 (7th Cir. 1975) ("the Board [now OTS] has promulgated comprehensive rules and regulations

concerning the powers and operations of every federal savings and loan association 'from its cradle to its corporate grave' "), citing *Meyers v. Beverly Hills Federal Savings & Loan Ass'n*, 499 F.2d 1145, 1147 (9th Cir.1974). Defendant Washington Mutual Bank asserts that, as a federally-chartered savings association, it is subject to the regulations promulgated by the OTS and that those regulations preempt the state law claims asserted by plaintiffs.

The parties agree that OTS has the authority to promulgate regulations providing for "the organization, incorporation,

examination, operation, and regulation of associations to be known as Federal savings associations." See 12 U.S.C. § 1464(a). The parties also agree that OTS's regulations preempt "certain aspects" of state law. The point of contention here is the extent of that preemption and whether plaintiffs' state law claims fall within the category of laws that the OTS has expressly excluded from preemption.

The OTS regulation at issue is "Applicability of law," 12 C.F.R. § 560.2, and the full text is set out below.[3] That provision directly addresses the issue of preemption.

**3.** § 560.2 Applicability of law.

(a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

(b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation,

state laws purporting to impose requirements regarding:

(1) Licensing, registration, filings, or reports by creditors;

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f–7a and

Paragraph (a) provides in part: "OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities ..." 12 C.F.R. § 560.2(a). "State law," according to subsection (a), includes "any state statute, regulation, ruling, order or judicial decision."

Paragraph (b) then provides an illustrative list of the types of state laws that are preempted. The list includes: "(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;" and "(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

Paragraph (c) then identifies categories of state laws that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations" or are otherwise consistent with the purposes of the regulations, in-

cluding but not limited to: contract and commercial law; real property law; and tort law.

▇▇ The parties have devoted a sizable portion of their arguments to OTS opinion letters interpreting § 560.2. However, the text of the regulation is clear as applied to the claims in this case. See *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (agency's interpretation of its own regulation is afforded deference only when the language of the regulation is ambiguous); *Lopez v. World Savings & Loan Ass'n*, 105 Cal. App.4th 729, 130 Cal.Rptr.2d 42, 48 (2003) (finding § 560.2 unambiguous so as to preempt state law claim based on fee for faxing payoff statement for real estate closing). Section 560.2 expressly preempts state laws purporting to regulate loan-related fees and the processing and servicing of mortgages. Section 560.2 also preempts state laws that more than incidentally affect lending operations. Thus, § 560.2 would preempt any state statute or judicial decision purporting to regulate loan-related fees or the processing and servicing of mortgages, or any state statute or judicial decision that has more than an incidental effect on the lending operations of federal savings associations.[4]

part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and (13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j 3 and part 591 of this chapter.

(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
(1) Contract and commercial law;
(2) Real property law;
(3) Homestead laws specified in 12 U.S.C. 1462a(f);
(4) Tort law;
(5) Criminal law; and

(6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

4. The case law interpreting § 560.2 is sparse at this time, perhaps in large part because the current language stems from a 1996 rewrite of regulations by OTS. One goal of that revision was to reduce confusion concerning preemption. OTS explained:

This provision [§ 560.2] ... restates long-standing preemption principles applicable to federal savings associations, as reflected in earlier regulations, court cases, and numerous legal opinions issued by OTS and

### C. *Indiana Consumer Credit Code— Credit Sales*

Plaintiffs have alleged violations of the Indiana Consumer Credit Code–Credit Sales, specifically, Ind.Code § 24–4.5–2–202(3). That provision describes the closing costs that may be charged in connection with a consumer purchase of property secured by a mortgage:

(3) With respect to a debt secured by an interest in land, the following closing costs, if the costs are bona fide, reasonable in amount, and not for the purpose of circumvention or evasion of this article:

(a) fees for title examination, abstract of title, title insurance, property surveys, or similar purposes;

(b) *fees for preparing deeds, mortgages, and reconveyance, settlement, and similar documents;*

(c) notary and credit report fees;

(d) amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the loan finance charge; and

(e) appraisal fees.

*Id.* (emphasis added). Plaintiffs allege that Washington Mutual Bank committed a *per se* violation of Ind.Code § 24–4.5–2–203(3) by "charging reconveyance fees when there was no interest conveyed and/or reconveyed" because the fees were not bona fide or reasonable. Am. Cplt. ¶ 38.

█ Washington Mutual Bank argues that § 560.2 preempts plaintiffs' claim under the Indiana Consumer Credit Code–

Credit Sales for two reasons: (1) the statute purports to regulate reconveyance fees, which are "loan-related" or "servicing fees" within the scope of § 560.2(b)(5); and (2) the statute purports to regulate loan processing and origination within the scope of § 560.2(b)(10). The court agrees with Washington Mutual Bank on both points.

A reconveyance fee falls within the broad category of "loan-related fees." See, *e.g., Chaires v. Chevy Chase Bank, F.S.B.,* 131 Md.App. 64, 748 A.2d 34 (2000) (allegedly illegal property inspection fees and settlement related fees, including tax service fees, documentation fees, underwriting fees, appraisal fees, and courier fees, were loan-related fees); 12 C.F.R. § 560.2(b)(5) ("Loan-related fees, *including without limitation,* initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees") (emphasis added); see also *Lopez v. Washington Mutual Bank, FA,* 302 F.3d 900, 907 (9th Cir.2002) (examining 12 C.F.R. § 557.11–.13, OTS regulations containing similar preemption language; finding that a state law exempting SSI benefits from any enforcement action purported to regulate "checking accounts," a category of state law that the OTS deposit regulations listed as preempted), *opinion amended on other grounds,* 311 F.3d 928 (9th Cir.2002).

Plaintiffs have attempted to distinguish reconveyance fees from "loan-related fees" on the theory that § 560.2 does not specifically list reconveyance fees or unearned fees as a type of loan-related fee. This

the Federal Home Loan Bank Board (FHLBB), OTS's predecessor agency. In those opinions, OTS has consistently taken the position that, with certain narrow exceptions, any state laws that purport to affect the lending operations of federal savings associations are preempted. None of the changes implemented today should be construed as evidencing in any way an in-

tent by OTS to change this long held position: OTS still intends to occupy the field of lending regulation for federal savings associations. OTS believes that the new lending preemption regulation is clearer and should significantly reduce the instances in which institutions need to request interpretive guidance from OTS.

61 Fed.Reg. 50951, 50952 (1996).

argument is not persuasive. Section 560.2(b) is entitled "illustrative examples." The failure to list "reconveyance fees" as an example does not signal that OTS meant to exclude state laws regulating such fees from preemption. See 61 Fed. Reg. 50951, 50966 (1996) ("Failure to mention a particular type of state law that affects lending should not be deemed to constitute evidence of an intent to permit state laws of that type to apply to federal thrifts."). The specific provision describing loan-related fees also states that the list of fee types is not exhaustive. 12 C.F.R. § 560.2(b)(5) ("Loan-related fees, including without limitation, initial charges, late charges prepayment penalties, servicing fees, and overlimit fees.").

By asserting that Washington Mutual Bank violated Ind.Code § 24–4.5–2–203(3) by charging a reconveyance fee that allegedly was neither bona fide nor reasonable, plaintiffs seek to impose requirements of Indiana state law on the types of loan-related fees that a federal savings association may charge. That is exactly the type of state law regulation that is expressly preempted by § 560.2(b)(5). Thus, plaintiffs' claim under Ind.Code § 24–4.5–2–202(3)· is preempted and must be dismissed.

## D. *State Common Law Claims*

Plaintiffs have also asserted state common law claims for fraud; breach of fiduciary duty; concealment, nondisclosure and breach of the duty of good faith and fair dealing; unjust enrichment; and conversion in connection with the reconveyance fees they were charged. Washington Mutual Bank argues that those claims are preempted because they seek to impose state law requirements on the origination and servicing of mortgages within the meaning of § 560.2(b)(10). Even if plaintiffs' common law claims are not expressly preempted, defendant contends that the claims as applied to the reconveyance fee

"more than incidentally affect" lending operations and are therefore also preempted pursuant to § 560.2(c). Plaintiffs argue that their state law claims are tort claims, a category of state law that is expressly excluded from preemption.

· Although § 560.2(c) does not preempt tort law *in its entirety* as applied to federal savings associations, the preamble contains an important limitation: "State laws of the following types are not preempted *to the extent that they only incidentally affect* the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. § 560.2(c) (emphasis added). Paragraph (a) states that "OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."

In this case, plaintiffs' tort law claims seek to regulate the fees that Washington Mutual Bank, a federally-chartered savings association, can charge its customers. A decision in plaintiffs' favor would have the same effect as a direct regulation of the fees: to determine the circumstances under which Washington Mutual Bank may charge its customers a reconveyance fee, which is a loan-related fee. Thus, applying tort law in this case would more than "incidentally affect" lending operations by imposing substantive requirements on lending operations, specifically, the types of loan-related fees that a bank could charge. See, *e.g., Moskowitz v. Washington Mutual Bank, F.A.*, 329 Ill. App.3d 144, 263 Ill.Dec. 502, 768 N.E.2d 262 (2002) (finding breach of contract claim preempted by § 560.2 because it would impose state substantive requirements regarding the disclosure of payoff statement fees, a loan-related fee). Further, requiring that Washington Mutual Bank's reconveyance fees conform to Indiana tort law

would mean that federal savings associations would be subject to a host of regulations that varied by state. That practical consequence is precisely what the OTS sought to prevent in establishing a uniform scheme of regulation for savings associations. See 12 C.F.R. § 560.2(a). Thus, plaintiffs' state common law claims are also preempted by 12 C.F.R. § 560.2.

### Conclusion

Defendants' motion to dismiss plaintiffs' first amended complaint is granted. As with virtually any Rule 12(b)(6) motion, however, plaintiffs are entitled to an opportunity to amend their complaint to attempt to cure the problems, if they believe they can do so consistent with Rule 11 of the Federal Rules of Civil Procedure. Plaintiffs may file a second amended complaint no later than September 12, 2003. If they do not do so, the court will then enter a final judgment of dismissal for failure to state a claim.

So ordered.