■ ALAN MONROIG, Appellant, v WASHINGTON MUTUAL BANK, FA., Respondent. [800 NYS2d 416]—

In an action, inter alia, to recover damages for fraud, tortious interference with contract, inducement of breach of fiduciary duty, unjust enrichment, and money had and received, arising from the payment by the defendant mortgage lender to a nonparty mortgage broker of a yield spread premium, the plaintiff appeals (1) from an order of the Supreme Court, Nassau County (Warshawsky, J.), entered April 29, 2004, which granted that branch of the defendant's motion which was for summary judgment dismissing the complaint on federal law preemption grounds, and (2), as limited by his brief, from so much of an order of the same court entered September 24, 2004, as, upon granting reargument, adhered to its original determination dismissing the complaint and, in effect, denied that branch of the plaintiff's motion which was for leave to serve an amended complaint.

Ordered that the appeal from the order entered April 29, 2004, is dismissed, as that order was superseded by the order entered September 24, 2004, made upon reargument; and it is further,

Ordered that the order entered September 24, 2004, is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the respondent.

The plaintiff retained nonparty mortgage broker Home Finance of America (hereinafter Home) to procure a mortgage for his purchase of a single-family residence located in Center Moriches, and in exchange, the plaintiff would pay Home 1% of the loan amount. Home procured the defendant's commitment to offer the plaintiff a 30-year mortgage in the sum of $220,000 at a 6.25% interest rate. Prior to the closing on August 7, 2003, the defendant prepared a good faith estimate (hereinafter the GFE) dated April 9, 2003, which the plaintiff signed, and which disclosed a yield spread premium (hereinafter the YSP) to be paid to Home by the defendant in the amount of $4,983 (approximately 2.27% of the loan amount). At the closing, the

plaintiff and his wife took title to the premises, with their purchase partially funded by a $260,000 loan from the defendant. The plaintiff paid Home a 1% origination fee for its services ($2,600) and the defendant paid Home a YSP of 1.875% of the loan amount ($4,875). The plaintiff contends that he had no knowledge of the YSP and, in any event, the YSP which the defendant paid to the lender was a bribe to induce Home to obtain his agreement to a mortgage loan with an interest rate above the par or market rate, which resulted in higher interest and finance charges over the life of the loan.

The defendant is a federal savings association chartered under federal law and operating under the supervision of the federal Office of Thrift Supervision (hereinafter the OTS), an agency established by the Home Owners' Loan Act (12 USC § 1461 *et seq.* [hereinafter the HOLA]). In pertinent part, OTS regulations expressly authorize OTS to promulgate regulations that preempt state laws affecting the operations of federal savings associations (*see* 12 CFR 560.2 [a]), i.e., federal preemption. The types of state laws that are expressly preempted include those relating to credit terms, loan related fees, disclosure or advertising; and processing, origination, or servicing of loans (*see* 12 CFR 560.2 [b] [4], [5], [9], [10]; *see also Flagg v Yonkers Sav. & Loan Assn., FA*, 396 F3d 178 [2005]). However, the OTS does provide an exception for: (1) state laws which "only incidentally affect the lending operations" of federal savings associations or (2) are not contrary to 12 CFR 560.2 (a), which state laws are not necessarily preempted (*see* 12 CFR 560.2 [c]).

OTS regulations explain that HOLA is not intended to preempt "basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes" (*see* 61 Fed Reg 50951, 50966 [1996] [codified at 12 CFR 545.1 *et seq.*]). As further guidance, OTS regulations explain that the first step in determining whether HOLA preempts a state law is to determine if the law is listed in 12 CFR 560.2 (b). If it is listed, the state law is preempted and the analysis ends (*id.* at 50966-50967). The second step is whether the state law "affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted" (*id.* at 50966). Further, the OTS advises that 12 CFR 560.2 (c) "is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption" (*id.* at 50966-50967).

We agree with the Supreme Court's determination that HOLA expressly preempts the claims set forth in the plaintiff's complaint. The plaintiff's claims based upon state law more

than incidentally concern credit terms, loan related fees and/or processing, origination, or servicing of loans, as well as the defendant's lending operations. Accordingly, they are preempted by HOLA (*see* 12 CFR 560.2 [b] [4], [5], [10]; [c]; *Wint v ABN Amro Mtge. Group, Inc.*, 19 AD3d 588 [decided herewith]; *see also Haehl v Washington Mut. Bank, F.A.*, 277 F Supp 2d 933, 941-942 [2003]; *Washington Mut. Bank v Superior Ct. of Los Angeles County*, 95 Cal App 4th 606, 620-621, 115 Cal Rptr 765 [2002]; *Moskowitz v Washington Mut. Bank, FA.*, 329 Ill App 3d 144, 148-149, 768 NE2d 262, 265-266 [2002]).

In light of our determination, we do not reach the remaining issues. Florio, J.P., Schmidt, Adams and Mastro, JJ., concur.