**Mark BUSHBECK, et al., Plaintiffs,**

**v.**

**CHICAGO TITLE INSURANCE COMPANY, Defendant.**

**Case No. C08–755JLR.**

United States District Court,
W.D. Washington,
at Seattle.

Dec. 4, 2008.

piro LLP, Timothy J. Warzecha, Law Offices of Timothy J. Warzecha, Seattle, WA, Ari Y. Brown, Schoengold Sporn Laitman & Lometti, New York, NY, for Plaintiffs.

Derek Edward Diaz, Erica L. Calderas, Robert Jerome Fogarty, Steven Avery Goldfarb, Hahn Loeser & Parks LLP, Cleveland, OH, Anne Melani Bremner, Darrin E. Bailey, James R. Lynch, Theron A. Buck, Stafford Frey Cooper, Seattle, WA, for Defendant.

## ORDER

JAMES L. ROBART, District Judge.

This matter comes before the court on Defendant Chicago Title Insurance's ("Chicago Title") motion for judgment on the pleadings (Dkt. # 21). Having considered the papers filed in support of and in opposition to the motion and heard the argument of counsel, for the reasons that follow the court GRANTS in part and DENIES in part the motion for judgment on the pleadings.

## I. BACKGROUND

Plaintiffs Mark and Raelene Bushbeck (the "Bushbecks") allege that on or about July 10, 2007, they signed closing documents for a refinance of their home located in Kirkland, Washington. (Compl.(Dkt. # 1) ¶ 24.) Their "settlement agent" was Chicago Title. (*Id.*) The documents presented for the Bushbecks' signatures included an "Estimated Settlement Statement" ("Estimated HUD–1"). (Compl. ¶¶ 26–27.) The Estimated HUD–1 detailed the fees paid by the Bushbecks and by law was required to identify the person or company receiving each settlement fee as well as a description of the fee. (Compl. ¶ 29.) The Estimated HUD–1 reflected that the Bushbecks paid the following fees to Chicago Title: (1) "Settlement or Closing Fee" of $381.15; (2) "Document

Steve W. Berman, Thomas E. Loeser, Tyler Weaver, Hagens Berman Sobol Sha-

preparation" fee of $163.95; (3) "Courier/UPS" fee of $34.14; and (4) $1,002.92 for title insurance in the face amount of the new mortgage. (Compl. ¶ 30.) In addition, the Estimated HUD–1 states that the Bushbecks paid $270 in "Reconveyance Fees to Chicago Title Insurance Co." (Compl. ¶ 31.) The Estimated HUD–1 also indicates that the Bushbecks were charged $299,476.60 and $284,413.59 for "TOTAL PAYOFF TO COUNTRYWIDE HOME LOANS" for the two loans that were paid off in the refinance transaction. (Compl. ¶ 32.) The payoff amounts to Countrywide included a $30 fee for reconveyance processing and a $32 fee for recording of the reconveyances associated with those loans. (*Id.*)

In a refinancing transaction, such as the one at issue in this case, the escrow company is responsible for ensuring that the prior loans are paid off and that the new loans are properly recorded. (Compl. ¶ 13.) When prior mortgages or loans that were secured by real property are paid off, deeds of trust or liens associated with those loans are extinguished in a process called reconveyance. (*Id.*) It is alleged that during the time period covered by this lawsuit most if not all major lenders, rather than escrow companies, handled their own reconveyance processing either at no charge to the borrower or with a charge that was included in the payoff amount due from the borrower to close the loan account. (Compl. ¶ 15.) The Bushbecks allege that Chicago Title charged and kept the $270 reconveyance fee even though it did not perform the reconveyance. (Compl. ¶ 37.)

## II. ANALYSIS

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the district court must "accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "A district court will render a judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir.1997). "Judgment may only be granted when the pleadings show that it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* When reviewing a motion for judgment on the pleadings the court may consider documents that were either attached to the complaint or on which the complaint necessarily relies. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).

### A. Breach of the Escrow Instructions

The Bushbecks' first cause of action is breach of contract for breach of the escrow instructions. They allege that Chicago Title breached the contract by "charging reconveyance fees in addition to the escrow fees charged for no additional settlement services other than those Defendant was already obligated to perform" and "failing to disclose to Plaintiffs and the Class that they were not required to use Defendant for reconveyance related settlement services and that reconveyance processing was actually being performed by Plaintiffs' and the Class' prior lenders at no charge or for fees separately paid by Plaintiffs and the Class in their loan payoffs." (Compl. ¶¶ 64–65.) As to the first alleged breach, charging reconveyance fees in addition to escrow fees, Chicago Title asserts that the Bushbecks specifically authorized and directed Chicago Title to collect reconveyance fees in addition to the escrow fees and that the contract allowed

them to collect charges for uncertain fees. As to the second alleged breach, Chicago Title argues that it was under no duty, under the contract, to disclose that the Bushbecks were not required to use Chicago Title for reconveyance services or that their prior lender was actually performing the reconveyance processing.

Taking the allegations in the complaint as true, the Bushbecks have alleged a claim for breach of contract. Chicago Title does not contest that it had a valid contract with the Bushbecks. Instead, it contends that the reconveyance scheme was not a breach of the parties' contract. Whether a party has breached a contract is a question of fact. *Frank Coluccio Const. Co., Inc. v. King County*, 136 Wash. App. 751, 150 P.3d 1147, 1153 (2007). The complaint alleges that Chicago Title took actions that caused a breach of the contract. It would be inappropriate at this stage in the proceedings for the court to make a factual determination whether Chicago Title's actions constituted a breach of the contract between the parties. The court declines Chicago Title's invitation to dismiss the Bushbecks' first claim for relief.

### B. Breach of Alleged HUD–1 Contract

█ In the second count of their complaint the Bushbecks allege that the Estimated HUD–1 created a binding written agreement between them and Chicago Title. (Compl. ¶ 68.) They allege that Chicago Title breached the agreement by failing to truly and accurately account for the funds disbursed by failing to disclose to the Bushbecks and the Class that they were not required to use Chicago Title for reconveyance services and that reconveyance processing was being performed by their lenders at no cost or for fees separately paid by the Bushbecks and the Class. (Compl. ¶ 71.) Chicago Title con-

cedes that HUD–1 statements memorialize certain aspects of a real-estate transaction; however, it contends that they are not contracts. In support of its argument, Chicago Title cites four cases, *Hampden Real Estate, Inc. v. Metro. Mgmt. Group*, No. 02–1160, 2003 WL 23206072, at *5 (E.D.Pa. Dec. 30, 2003), *rev'd, Hampden Real Estate, Inc. v. Metro. Mgmt. Group, Inc.*, No 04–2500, 2005 WL 1842116 (3d Cir. Aug. 4, 2005); *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D.Kan.2007); *Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779, 780 (1967); and *Koschene v. Hutchinson*, 73 Va. Cir. 103, 105 (Va.Cir.Ct.2007), that it claims all recognize that an Estimated HUD–1 is not a binding contract. Only one of these cases, *Koschene*, makes the affirmative finding that an Estimated HUD–1 is not a contract. 73 Va. Cir. at 105. As *Koschene* is out of circuit, it is not binding on this court. In support of their position the Bushbecks cite *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 245 (W.D.Pa.2008), where the court certified, for class treatment, a claim regarding breach of an Estimated HUD–1. *Slapikas* does not, however, make a finding that an Estimated HUD–1 is a contract.

"The essential elements of a contract are the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration." *DePhillips v. Zolt Constr. Co., Inc.*, 136 Wash.2d 26, 959 P.2d 1104, 1107 (1998). At this stage of the proceedings the Bushbecks need to allege these essential elements in order to survive a motion for judgment on the pleadings. Here, the purported contract has been provided by the parties and, as the Bushbecks point out, it identifies the parties, contains a promise, identifies the actions undertaken in escrow and recites the fee paid by the Bushbecks as consideration. (*See* Appendix to Mot. (Dkt. # 21–2) at 1–3.) This is enough at

this stage to survive a motion for judgment on the pleadings. It is important to note that the court is not determining whether the Estimated HUD–1 is or is not a contract; rather, it finds looking at the information before it that the Bushbecks have alleged facts sufficient to survive a motion for judgment on the pleadings on this claim. The question whether an Estimated HUD–1 is or is not a contract is a question that will likely be addressed later in the proceedings.

### C. Real Estate Settlement Procedures Act ("RESPA")

#### 1. *Bloom* and "Settlement Services"

■ The Bushbecks allege a violation of 12 U.S.C. § 2607 through Chicago Title's practice of "charging reconveyance fees in real estate transactions in which they have not performed reconveyance processing, Defendant has engaged and continues to engage in the practice of receiving a portion, split and percentage of a fee for the rendering of a real estate settlement service other than for services actually performed"; "charging reconveyance fees in real estate transactions in which Plaintiffs and the Class have separately been charged for reconveyance processing by their prior lenders, Defendant has engaged and continues to engage in the practice of receiving a duplicate reconveyance fee for the rendering of a real estate settlement service"; "requiring Plaintiffs and the Class to use Defendant for additional reconveyance settlement services, in conjunction with escrow settlement services"; and "receiving a payment for 'multiple services' ... which are not actual, necessary and distinct from the primary services provided." (Compl. ¶¶ 75–78.) Citing *Bloom v. Martin,* 77 F.3d 318, 319 (9th Cir.1996), Chicago Title contends that RESPA does not apply to reconveyance fees as they are not encompassed within the definition of

"settlement services." RESPA defines "settlement services" as including

> any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement.

12 U.S.C. § 2602(3).

In *Bloom* the Ninth Circuit considered the question whether RESPA and Regulation X, 24 C.F.R. § 3500 *et seq.,* require lenders to disclose through the Estimated HUD–1 and the good faith estimate that reconveyance fees may be assessed in the future. *Id.* at 320. The court concluded that Regulation X and RESPA did not apply because the good faith estimate was not intended to apply to costs paid by property owners after the settlement, the Estimated HUD–1 was not required to include uncertain future costs such as reconveyance fees and RESPA was meant to apply only to costs payable at or before settlement. *Id.* at 320–21. As the Bushbecks point out, the facts here are quite different. The fees at issue were costs payable at or before settlement, were not assessed after the closing, were included on the Estimated HUD–1 and there was no doubt that they would be collected. The court agrees with the Bushbecks' observations and finds that they have alleged facts leading to the conclusion that the fees at issue in this case are encompassed with-

in the definition of "settlement services." The holding in *Bloom* does not apply to the facts as pleaded in this complaint.

### 2. Fee for No Services

Chicago Title next claims that even if RESPA applies to the fees at issue here that the Bushbecks' claim fails because they admit services were actually performed for the fee. It points to paragraph 15 of the complaint which states: "[I]n virtually all transactions involving major lenders—and in the transactions of Plaintiffs and the Class—the escrow company does not, in fact, prepare, process or record the reconveyance of the prior loan deed(s), it merely ensures that it has occurred." Chicago Title construes this as an admission by the Bushbecks that it did something for the reconveyance fee. It argues that if it performed some service for the fee then the Bushbecks' claim is for an overcharge which is not governed by RESPA. In response, the Bushbecks point to several paragraphs in the complaint where they allege that Defendant's reconveyance fees were for no services rendered. (*See* Compl. ¶¶ 4, 6, 37, 41.) In addition they argue, citing paragraph 41 of the complaint, that to the extent that "tracking" is considered a service that this "service" was included in the duties Chicago Title was supposed to perform for the $350 escrow fee. The court finds that the allegations with respect to the collection of a fee for no services performed are sufficient to survive the motion for judgment on the pleadings.

### 3. Split of an Unearned Fee

Chicago Title next contends that even if the reconveyance fees were not earned, the Bushbecks fail to state a viable claim because they fail to allege a split of an unearned fee. The Bushbecks argue that the fee need not be split in order to be reached by RESPA. Chicago Title cites four cases to support its argument: *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 836 (8th Cir.2003); *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir.2002); *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 627 (7th Cir.2001); and *Haehl v. Wash. Mut. Bank, F.A.*, 277 F.Supp.2d 933, 937 (S.D.Ind.2003). These cases all hold that to state a claim under § 8(b) of RESPA a plaintiff must allege an illegal split of a fee with a third-party. In response, the Bushbecks cite a number of more recent opinions that stand for the opposite proposition. *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir.2007); *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 389 (3d Cir.2005); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 62 (2d Cir. 2004); *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 983 (11th Cir.2003). These cases fall into two groups, those that hold that a RESPA claim is stated where the plaintiff alleges that (1) a fee was charged by a single service provider for no services rendered and (2) the defendant marked up a fee that it paid to a third-party to perform a service even though the amount charged in excess of the actual cost of the service is not split with a third-party.[1] The Ninth Circuit has not addressed this issue.

The court finds the reasoning in *Cohen* persuasive as the facts in *Cohen* are similar to the facts of this case. In *Cohen* when the plaintiff refinanced her home mortgage she was presented with a closing statement listing a number of fees including a "post-closing fee" of $225. 498 F.3d

---

1. Because the court finds that *Cohen* is dispositive, it does not address the second group of cases.

at 113–14. She alleged that the defendant provided no services for this fee. *Id.* at 114. The Second Circuit was faced with the question whether RESPA § 8(b) applied to undivided, as well as divided, unearned fees. The court first looked to § 8(b) which states: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). It also looked to a Department of Housing and Urban Development ("HUD") formal policy statement construing this part of the statute which proscribes unearned fees in three contexts:

> [where] (1) [t]wo or more persons split a fee for settlement services, any portion of which is unearned; or (2) one settlement service provider marks-up the cost of services performed or goods provided by another settlement service provider without providing additional actual, necessary, and distinct services, goods, or facilities to justify the additional charge; or (3) *one service provider charges the consumer a fee where no, nominal, or duplicative work is done,* or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

*Cohen,* 498 F.3d at 114 (quoting Statement of Policy 2001–1, 66 Fed. Reg. 53,052, 53,-059 (Oct. 18, 2001) (codified at 24 C.F.R. § 3500.14(c)) (emphasis added)). The italicized portion of the third numbered provision applied to the plaintiff in the *Cohen* case and would apply here. The Second Circuit held that RESPA was ambiguous as to whether its protections could apply to an undivided fee. *Id.* at 116–24. It then looked to how HUD would resolve the ambiguity. *See id.* at 124–25. It found that HUD reasonably resolved the ambi-

guity by construing the statute to apply to undivided fees, it accorded that construction *Chevron* deference and allowed the plaintiff's claim to proceed. *Id.* at 126. Chicago Title cannot distinguish the *Cohen* decision and so it characterizes the opinion as "truly a stand-alone, minority view." This argument is not persuasive. Relying on the reasoning in *Cohen,* the court determines that the Bushbecks need not have alleged a split of the unearned fee and allows the claim to proceed.

**D. Washington State Consumer Protection Statutes**

**1. Washington CPA and the Alleged Conduct**

■ Chicago Title next argues that the fourth count, alleging a claim under the Washington Consumer Protection Act ("CPA"), should be dismissed because the Bushbecks do not allege sufficient facts to establish a business practice that is unfair or deceptive or that impacts the public interest. It contends that its business practices with respect to reconveyance fees and banking benefits comport with the loan documents and Washington law. It also argues that the Bushbecks cannot allege an effect on the public interest from an escrow transaction because Chicago Title does not advertise to the general public and did not solicit the Bushbecks. The Bushbecks point out that Chicago Title does not cite to any Washington law that would allow it to charge a duplicate reconveyance fee, the escrow instructions do not address the duplicate fee or disclose it, and that Chicago Title has made a number of misrepresentations and omissions that are unfair and deceptive including collecting a reconveyance fee despite not performing a reconveyance, double-charging for a service that it had agreed to perform as part of its general escrow services and charging a reconveyance fee despite knowing that

the Bushbecks' lender was performing the reconveyance.

In order to state a claim for a violation of Washington's CPA the plaintiff must allege the following: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) an injury to plaintiff in his or her business or property; and (5) causation. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531, 535–39 (1986). Chicago Title argues that under the holding in *Hangman Ridge* an escrow transaction cannot be considered a private transaction. What it fails to acknowledge however is that the escrow transaction at issue in *Hangman* did not violate the CPA because the first element, an unfair act or practice, was not met and the court analyzed the remaining elements, including public interest merely for "illustrative purposes." 719 P.2d at 539. *Hangman Ridge* did not hold that all escrow transactions are, as a matter of law, private transactions. In fact the court stated that where a transaction was essentially a private transaction "it may be more difficult to show that the public has an interest in the subject matter" but noted that it is not impossible to demonstrate that the public has an interest in the subject matter. *Id.* at 538. "[T]he likelihood that additional plaintiffs have been or will be injured in exactly the same fashion [ ] changes a factual pattern from a private dispute to one that affects the public interest." *Id.* This is exactly what the Bushbecks have alleged here. The court finds that the Bushbecks have alleged all of the elements necessary to state a claim under the CPA. (*See* Compl. ¶¶ 81–89.)

### 2. Standing and Other State Consumer Protection Act Claims

Chicago Title's next argument is that the Bushbecks lack standing to invoke the consumer protection laws of any state other than Washington because they do not claim that they suffered an invasion of a legally protected interest under the laws of any other state. The Bushbecks claim that they do not presently have to demonstrate standing in other states. The court is aware that it will need to address the standing issue prior to class certification but declines to address the issue at this time.

### E. Breach of Fiduciary Duty

■ Chicago Title contends that the Bushbecks have not stated a viable claim for a breach of fiduciary duty. In their complaint the Bushbecks allege that Chicago Title served as a fiduciary to them and that that duty included an obligation to act with "scrupulous honesty and refrain from self-dealing that harms the principal." (Compl. ¶ 98.) They allege that the fiduciary duties of an escrow agent include: "(a) disclosing all material facts concerning the agent's services; (b) charging fees only for services actually performed and charges actually incurred and not in substantial excess to costs; and (c) performing services in accord with legal duties." (*Id.*) They contend that Chicago Title breached these duties by "engaging in misrepresentations and self-dealing, including the Reconveyance Scheme and specifically: (a) charging fees not incurred or charging for settlement services greatly in excess of the Defendant's actual costs, if any; (b) disbursing or causing to be disbursed escrow funds in a manner other than authorized by the escrow instructions; and (c) affirmatively misrepresenting and/or omitting to state material facts pertaining to escrow." (Compl. ¶ 99.) They also allege damage. (*See* Compl. ¶ 100.)

In order to state a claim for breach of fiduciary duty a plaintiff must allege the

following: (1) existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach was the proximate cause of the injury. *Micro Enhancement Int'l v. Coopers & Lybrand, Inc.*, 110 Wash.App. 412, 40 P.3d 1206, 1217 (2002). Rather than argue that the Bushbecks failed to allege one of these key elements, Chicago Title contends that beyond the duty to disclose the fee, it owed no further duty of disclosure to obtain Plaintiffs' consent to the fee, it clearly satisfied any duty it had by disclosing the fee and that it caused no harm to the Bushbecks. When deciding a Fed.R.Civ.P. 12(c) motion the court takes the facts as alleged by Plaintiffs as true. The Bushbecks have alleged facts necessary to make out a claim and Chicago Title has failed to demonstrate that it is entitled to judgment as a matter of law.

### F. Breach of Agency Duties

 Chicago Title asserts that the breach of agency duty claim is flawed because Plaintiffs expressly agreed that Chicago Title could charge a separate reconveyance fee. In response, the Bushbecks note that Chicago Title's argument relies on facts that are contrary to those alleged in the complaint. The Bushbecks are correct. Rather than arguing that the Bushbecks failed to allege an essential element or elements of this cause of action, Chicago Title asks this court to accept its version of the facts. As previously stated, at this stage of the proceedings the court must take all allegations in the complaint as true. In the complaint, the Bushbecks have alleged a duty, a breach of that duty and damages flowing as a result of the breach. (*See* Compl. ¶¶ 102–104.) The court will allow this claim to go forward.

### G. Unjust Enrichment

Chicago Title contends that the Bushbecks' unjust enrichment claim fails because it relates to the same matter as a written contract, the escrow instructions. It argues that a party can assert a claim for unjust enrichment only as to an "implied contract" but not a written contract. At oral argument the Bushbecks conceded that if the court allowed the contract claims to proceed that the claim for unjust enrichment should be dismissed. Accordingly, the court grants the motion for judgment on the pleadings with respect to the unjust enrichment claim and dismisses that claim.

### III. CONCLUSION

For the foregoing reasons the court GRANTS in part and DENIES in part the motion for judgment on the pleadings.